IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ISYSTEMS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:08-CV-1175-N |
| | § | |
| SPARK NETWORKS LTD., *et al.*, | § | |
| | § | |
| Defendants. | § | |

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

By Order and Judgment dated June 28, 2010 [37, 38], the Court dismissed Plaintiff Dan Benare d/b/a ISystems's ("ISystems") amended complaint. ISystems appealed and, by opinion dated March 21, 2012 [44], the United States Court of Appeals for the Fifth Circuit affirmed in part and reversed and remanded in part, remanding only ISystems's claims against Spark Networks Ltd. and Spark Networks, Inc. under the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1114(2)(D)(iv)-(v). On December 9, 2013, ISystems filed an amended complaint that asserted a claim only under section 1114(2)(D)(iv). On July 21, 2014, the Court called the remaining claim for trial. All parties appeared through counsel. At the close of ISystems's case in chief, the Court dismissed its claim against Defendant Spark Networks, Inc. Based on the pleadings, the evidence received at trial, and the arguments of counsel, the Court now makes these findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure:

# I. FINDINGS OF FACT

1. On or about January 16, 2001, Matchnet plc registered the service mark "JDATE" with the United States Patent and Trademark Office, Reg. No. 2,420,967 (the "JDATE Mark"). Defendant Spark Networks Ltd. ("Spark") is the successor in interest of Matchnet plc in the JDATE Mark. The JDATE Mark registration is valid and subsisting. Spark is the owner of the JDATE Mark and was the owner at all relevant times.

2. Among other things, Spark provides dating services to Jewish singles over the internet using the JDATE Mark and the internet domain jdate.com.

3. The Julian calendar was introduced by Julius Caesar in 46 B.C. It was corrected by the more accurate Gregorian calendar in 1582. *See* en.wikipedia.org/wiki/Julian_calendar.

4. Plaintiff ISystems offered computer software for calendaring functions, apparently related to the Julian calendar.

5. Some time prior to May 19, 2008, ISystems registered the domain name jdate.net (the "Jdate Domain") with registrar Stargate Holdings Corp., and pursuant the to registration agreement ISystems agreed to resolve domain-name disputes in accordance with ICANN's Uniform Domain Name Dispute Resolution Policy (the "Policy"). *See* Defendant's Exhibit (DX) 3 at SPARKPROD00692; Plaintiff's Exhibit (PX) 19 (the Policy).

6. At some point, ISystems permitted an unrelated group (the "Jewish Dating Network") to host a website at www.jdate.net to provide information regarding Jewish dating services.

7. On or about May 19, 2008, attorney Victor Fu, acting on behalf of Spark, filed a complaint against ISystems with the National Arbitration Forum ("NAF") seeking transfer of the Jdate Domain from ISystems to Spark. *See* DX-1 (the "NAF Complaint"). The NAF Complaint alleges that the Jdate Domain is identical to, confusingly similar to, and/or dilutive of the JDATE Mark. The outcome of the NAF Complaint was a ruling by NAF that ordered that the Jdate Domain be transferred from Isystems to Spark. *See* DX-3.

8. The Court finds Fu's testimony regarding the preparation of the NAF Complaint to be credible.

9. When Fu prepared the NAF Complaint, for some reason the www.jdate.net website was not accessible. Accordingly Fu used the Wayback Machine (web.archive.org), which Fu understood to maintain archival copies of various web sites at various times. The record is unclear as to the exact nature and processes used by the Wayback Machine to archive web sites. Those details are unnecessary to Fu's testimony, which the Court credits.

10. Fu obtained what he understood to be the then-current version of the www.jdate.net website from the Wayback Machine and printed it using Internet Explorer off a black and white printer and attached it to the NAF Complaint as Exhibit E. *See* DX-1 at SPARKPROD00675-76. Other versions of the www.jdate.net website version from 2008 printed in color reflect white text on a dark background (the "Omitted Text") saying:

> Yes! We are still not-for-profit.
>
> Yes! We still have the world's easiest dating reference.
>
> Yes! We still evaluate the best & worst Jewish dating websites and services.

FINDINGS OF FACT AND CONCLUSIONS OF LAW – PAGE 3

*See* PX-7, 9. That text is not visible on Exhibit E to the NAF Complaint.

11. Fu did not alter Exhibit E to the NAF Complaint to conceal the Omitted Text. Fu did not intend to conceal the Omitted Text from the NAF. Fu believed in good faith that Exhibit E to the NAF Complaint fairly and accurately represented the content of the Jdate Domain for purposes of the NAF Complaint. Fu did not knowingly misrepresent the content of the www.jdate.net website when he tendered Exhibit E to the NAF Complaint.

12. The state of the record is unclear as to why the Omitted Text is not visible in Exhibit E to the NAF Complaint. Spark proffered evidence that this was a consequence of using an older version of Internet Explorer; because that evidence was not timely disclosed in discovery, the Court sustained ISystems's objection to it. So at present, the record is unclear what happened. It is not necessary for the Court to know what did cause the omission of the Omitted Text for the Court to determine based on Fu's testimony that Fu's deliberate actions were not the cause.

13. It would be foolish for counsel for a complainant in an NAF proceeding to tender an altered version of a website to NAF because, under the applicable rules, the respondent has an opportunity to respond to the complaint and could easily point out the alteration. In fact, ISystems did just that. *See* PX-18 at 3 (appendix page 66 of 143). ISystems also advised NAF of ISystems's contention that the use of the Jdate Domain and the www.jdate.net website was not-for-profit. ISystems inexplicably failed to include in its response a copy of what it contended was an accurate depiction of the www.jdate.net website

or any other evidence to support its contention that the www.jdate.net website was used for noncommercial or nonprofit purposes.

14. There was no competent or probative evidence before NAF regarding whether or not the Jewish Dating Network operated as a nonprofit organization. There was no competent or probative evidence before this Court regarding whether the Jewish Dating Network operated as a nonprofit organization.

15. The omission of the Omitted Text from Exhibit E of the NAF Complaint did not affect the outcome of the NAF arbitration. The arbitrator was aware of ISystems's contention that the use of www.jdate.net was noncommercial or not-for-profit. *See* DX-3 at 4-5 (SPARKPROD00694-95) (arbitrator Respondent's contentions). Paragraph 4(c) of the Policy places the burden of proving noncommercial use on the respondent, i.e., Isystems. *See* PX-19 at 3 (appendix page 82 of 143) ("How to Demonstrate Your Rights to and Legitimate Interests in the Domain Name in Responding to a Complaint. . . . Any of the following circumstances . . . if found by the Panel to be proved based on its evaluation of all evidence presented, shall demonstrate your rights or legitimate interests to the domain name for purposes of Paragraph 4(a)(ii): . . . (iii) you are making a legitimate noncommercial or fair use of the domain name, without intent for commercial gain to misleadingly divert consumers or to tarnish the trademark or service mark at issue.").

16. The arbitrator did not find that ISystems's use of the JDate Domain was commercial because of the Omitted Text:

> The Complainant gave the Respondent no rights in respect of the disputed domain name. Therefore the burden shifts to the Respondent to show that he

FINDINGS OF FACT AND CONCLUSIONS OF LAW – PAGE 5

> comes within one of the limbs of Paragraph 4(c) of the Policy. It is clear that the Respondent is not commonly known by the disputed domain name. His only defence suggested under this paragraph is that he is making a legitimate non-commercial or fair use by using the disputed domain name under Paragraph 4(c)(iii).
>
> The Respondent does not provide any affidavits or declarations under penalty in support of his contentions that the sub-domain is operated by a Jewish group on a non-commercial basis. There is no supporting evidence from the group, as one might have expected, which would have helped discharge the onus on the Respondent.
>
> In the Panel's view, whilst there is an unproven suggestion that the use is non-commercial, it does not appear to be a fair use because the website features links to at least one competitor of the Complainant, if not to more competitors.

DX-3 at 5 (SPARKPROD00696). ISystems lost before the arbitrator on the issue of noncommercial use because: (a) ISystems failed to carry its burden of proof on the issue; and (b) the website ISystems hosted at www.jdate.net directly competed with Spark. The omission of the Omitted Text had nothing to do with the result.

17. NAF's transfer of the JDate Domain from ISystems to Spark was not based on the Omitted Text.

18. NAF's transfer of the JDate Domain from ISystems to Spark was not based on any representation regarding dilution, but on the basis that the JDate Domain was identical to, or confusingly similar to, the JDATE Mark. Spark's representation in the NAF Complaint that the JDate Domain was identical to, or confusingly similar to, the JDATE Mark was true, as was found by the arbitrator.

19. Any of the foregoing Findings of Fact that are more properly considered to be conclusions of law are also adopted by the Court as Conclusions of Law.

FINDINGS OF FACT AND CONCLUSIONS OF LAW – PAGE 6

## II. CONCLUSIONS OF LAW

1. The Court has jurisdiction over the parties and the subject matter of this action.

2. 15 U.S.C. § 1114(2)(D)(iv) provides:

If a registrar, registry, or other registration authority takes an action described under clause (ii) based on a knowing and material misrepresentation by any other person that a domain name is identical to, confusingly similar to, or dilutive of a mark, the person making the knowing and material misrepresentation shall be liable for any damages, including costs and attorney's fees, incurred by the domain name registrant as a result of such action. The court may also grant injunctive relief to the domain name registrant, including the reactivation of the domain name or the transfer of the domain name to the domain name registrant.

3. The Court here acts in an unusual posture. It is not deciding whether ISystems's use of the JDate Domain infringed Spark's trademark (or service mark) rights in the JDATE Mark. Likewise, it is not sitting as some form of appellate tribunal reviewing the correctness of the NAF arbitration award. Rather, the Court is determining in the first instance whether NAF ordered the transfer of the Jdate Domain from ISystems to Spark based upon a knowing and material misrepresentation by Spark that the Jdate Domain is identical to, confusingly similar to, or dilutive of the JDATE Mark.

4. Section 1114(2)(D)(iv) includes a causation requirement. The transfer must be "based on" the knowing and material misrepresentation.

5. Not all misrepresentations during the course of a domain name dispute are actionable under section 1114(2)(D)(iv). Only those representations "that a domain name is identical to, confusingly similar to, or dilutive of a mark" are actionable under the section.

6.  The Fifth Circuit found that the omission of the Omitted Text could be material, but only with respect to Spark's claim of dilution:

> Material misrepresentations include those that would influence an arbitrator's judgment that the domain name "jdate.net" is "dilutive" of the "JDate" mark. ACPA's definition of dilution excludes noncommercial uses of a mark, so the alleged disguise of the noncommercial nature of "www.jdate.net" would impact the arbitrator's assessment of whether "www.jdate.net" is "dilutive of" the "JDate" mark.

*ISystems v. Spark Networks, Ltd.*, 2012 WL 3101672, at *2 (5th Cir. 2012) (footnote citing to definition of dilution at 15 U.S.C. § 1125(c)(3)(C) omitted).

7.  ISystems's claims against Spark under section 1114(2)(D)(iv) are barred for three independent reasons, any one of which is sufficient to support a judgment in favor of Spark.

8.  First, any misrepresentation by Spark relating to the Omitted Text was not knowing.

9.  Second, the NAF award against ISystems was not "based upon" or caused by the omission of the Omitted Text, but rather by ISystems's failure to carry its burden of proof regarding noncommercial use. Notwithstanding the omission of the Omitted Text, the NAF arbitrator was well aware of ISystems's contention that the use of the JDate Domain was noncommercial. ISystems simply failed to persuade the arbitrator that its contention was true.

10. Third, the NAF arbitration award was not based on any misrepresentation that the JDate Domain was dilutive of the JDATE Mark, but rather on the true representation that the JDate Domain was identical to, or confusingly similar to, the JDATE Mark.

11.    ISystems should take nothing by its claim against Spark under section 1114(2)(D)(iv), and that claim should be dismissed with prejudice.

12.    Any of the foregoing Conclusions of Law that are more properly considered to be findings of fact are also adopted by the Court as Findings of Fact.

Signed September 19, 2014.

_____
David C. Godbey
United States District Judge